(December 22, 1942.)

LILA LONGSON, on Behalf of Herself and Other Stockholders Similarly Situated, Plaintiff, v. BEAUX-ARTS APARTMENTS, INC., Defendant.

Lazansky, P. J., Carswell and Taylor, JJ., concur; Adel, J., concurs, with the following memo: I do not believe that this case can be decided upon the authority of any of the cited decisions. In my opinion the original contract (Ex. A., the first preferred stock) determines the controversy. There it is provided that two-thirds of the stockholders may modify the contract (paragraphs XV and XVI, Ex. A.). The stockholders have met and more than two-

thirds (actually 96%) have consented to the reorganization plan, and the plaintiff is bound by their action. Hagarty, J., dissents and votes to direct judgment for plaintiff, as set forth in opinion.

Hagarty, J. (dissenting). I dissent and vote to direct judgment for plaintiff to a limited extent.

In accordance with the provisions of the plaintiff's certificate of stock and section 36 of the Stock Corporation Law (Cons. Laws, ch. 59), plaintiff cannot complain of the preferential changes *in futuro* which were wrought upon adoption of the plan of reorganization by a two-thirds vote of the stockholders. The issues as presented relate to vested rights to sinking fund payments and accrued dividends from 1931 to 1939, when the reorganization went into effect.

Although a close question is presented, my view is that plaintiff has no vested right to the sinking fund payments. As long as more than 26,250 shares of First Preferred Stock were outstanding, payments to the sinking fund by the corporation were required in an amount equal to the net income of the corporation for each fiscal year. It is conceded that net income, in various amounts, was earned for the fiscal year ending on April thirtieth of 1936, and in the fiscal years following, to and including 1939. Nevertheless, it is also conceded that at all times during that period, and thereafter to August 1, 1939, the corporation's liabilities exceeded the value of its assets, so that it was without surplus and had a capital deficiency.

It is well settled that purchase by a corporation of its outstanding stock, to be legally accomplished, must be made out of surplus. The corporation, therefore, could not devote its net income for that purpose. It might be argued, however, that the obligation of the corporation was to amortize the stock in an amount commensurate with its net income and that that obligation subsisted even though the corporation was prevented by law from retiring the stock during the period that it had no surplus. If so, the obligation remained to be fulfilled when it was legally possible for the corporation to do so. My opinion, however, is that the provision with respect to sinking fund payments " out of * * * net income " should be construed to mean that such sinking fund payments were to be made out of net profits or surplus. If so, there was no such surplus up to August 1, 1939, and thereafter the corporation was relieved from the obligation of making the sinking fund payments because the outstanding shares of First Preferred Stock were less than 26,250 shares.

Plaintiff, however, had a vested right to her accrued cumulative dividends on the 125 shares of First Preferred Stock which she held as of June 3, 1931. The operative provisions of the certificate of incorporation were that cumulative quarterly dividends at the rate of six dollars a share per annum were to be paid from surplus or net profits, and that so long as any of this stock remained outstanding " no stock of any class shall at any time be created ranking prior to, or *pari passu* with, the First Preferred Stock with respect to either the payment of dividends or the distribution of capital assets." Clearly, the holders of the First Preferred Stock were entitled to payment of their cumulative dividends in preference to all other stock issued by the corporation. These dividends have accrued since February 1, 1931, at the rate of six per cent. Thus there was a definite and fixed amount as of the effective date of reorganization, or August 1, 1939. The stockholders who had not exchanged their First Preferred Stock, pursuant to the reorganization plan, had a first lien, in effect, on the corporation's surplus for the amount of their accrued dividends during this period.

To say that the rights of these stockholders to the accrued dividends were not impaired after August 1, 1939, is not in accordance with the facts. The new " $3 Prior Preferred Stock " was then issued and, although no dividends have ever been paid on the original First Preferred Stock, dividends have been paid out of surplus on the new $3 Prior Preferred Stock since November 1, 1939, and a substantial portion of that stock has been retired. The preferential payment of the accrued dividends has been destroyed for all practical purposes. Indeed, that was one of the precise purposes of the corporation in reorganizing, as it was stated with respect to the reorganization plan that " It will eliminate a very large amount of accumulated dividends which the Company has no reasonable hope of paying  *  *  *."

The corporation had no right to avoid its obligation as to the accrued dividends.

In *Wiedersum* v. *Atlantic Cement Products, Inc.* (261 App. Div. 305, 308), the defendant sought to eliminate accrued dividends by means of a plan whereby the old preferred stock would be exchanged for new preferred stock and a small dividend. We held that the vested right of the preferred stockholder to the accrued dividends subsisted, despite reorganization, primarily on the authority of *Roberts* v. *Roberts-Wicks Co.* (184 N. Y. 257). Mr. Justice Johnston, in his opinion for this court, stated on authority, that " Decisions of other States are in accord in holding that cumulative dividends which have accrued through lapse of time on preferred stock become vested, contractual rights which cannot be destroyed by *any* reorganization." (Italics supplied.) The *Wiedersum* case is approvingly cited in *Davison* v. *Parke, Austin & Lipscomb, Inc.* (285 N. Y. 500, 507). In the *Davison* case it was held that the failure of the Legislature " to provide specifically that corporations issuing shares entitled to cumulative dividends could alter without the consent of each such stockholder the preferential right of preferred stockholders to be paid accrued dividends seems conclusive that no such power was intended to be conferred."

The contention of the defendant that the vested right to be paid the accrued dividends was lost because the prior preferred stock has merely been subordinated instead of being eliminated *in toto,* is untenable. The vested right obviously has been impaired, if not completely destroyed, by subordinating the rights of the old stockholders to payment of dividends on the new prior preferred stock. Thus the corporation has sought to avoid the preferential right of the preferred stockholders to payment from surplus on account of their accrued dividends.

I do not regard *Matter of Duer* (270 N. Y. 343) as an authority to the contrary. The question of the vested right of a stockholder to accrued dividends was not presented in that case. After the reorganization, the company went into liquidation. A stockholder who had not consented to the plan then belatedly sought, in effect, to exchange his stock for new stock for the purpose of participating in the distribution of the assets. He did not stand his ground and insist on his accrued dividends as a vested right. The only point at issue there was whether or not he was entitled, as a matter of law, to exchange his stock for the new stock after the time designated in the reorganization plan and receive therefor the same *pro rata* share of the proceeds of dissolution as the record participating preferred stockholders. It was held that he had no such right for the reason that when purchasers bought the new participating preferred stock and when preferred stockholders made the exchange, giving up what might have been valuable rights, a contract was made which could not be varied.

I vote to direct judgment for plaintiff in accordance with the relief granted in the *Wiedersum* case (supra), namely, for judgment declaring that the accrued

cumulative dividends on the preferred stock of plaintiff, and others similarly situated, from 1931 to 1939, and their preferential right to payment out of surplus have not been affected by the reorganization, and enjoining the defendant from paying dividends upon any of the capital stock without first providing for and liquidating the arrears of dividends which, up to August 1, 1939, accrued on the preferred stock of plaintiff and others similarly situated.

Judgment for plaintiff should be entered accordingly, with costs.